638

In re JONES.

Patent Appeal No. 5250.

Court of Customs and Patent Appeals.

June 17, 1947.

Caesar & Rivise, of Philadelphia, Pa. (C. W. Rivise and A. D. Caesar, both of Philadelphia, Pa. of counsel), for appellant.

W. W. Cochran, of Washington, D. C., (Clarence W. Moore, of Washington, D. C., of counsel) for the Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'CON-NELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all of the claims 1, 2, 4, 5, 6, 7, 9, 10, 11, 15, 16, 17 and 18 of an application, Serial No. 393,249, filed May 13, 1941, for a patent relating particularly to compositions derived from either 2-methyl naphthalene or 4-methyl naphthalene wherein certain radicals are substituted for the hydrogen atom at the 1 position of each composition.

Appellant alleges his compounds to be new and claims they are growth regulating, insecticidal and fungicidal compositions. In the composition claims the compound is the only ingredient recited therein.

Compounds having 2-fused benzene rings, each of which is a 6-carbon ring, with two of the carbons common to both rings, is identified by the term "naphthalene." It is

depicted by the drawing

in the angles of which are represented the positions of the carbon atoms. The 1, 4, 5 and 8 angles are also designated as alpha positions and the 2, 3, 6 and 7 angles are designated as beta positions.

The derivative compounds of the application have a methyl radical in the 2 and 4 positions, respectively, and at the 1 position have one of the following radicals: aceto-nitrite ($-CH_2-CN$); acetic acid ($-CH_2-COOH$); salts of acetic acid ($-CH_2-COOM$); esters of acetic acid ($-CH_2-COOR$); acetamide ($-CH_2-CONH_2$); methyl thiocyanate ($-CH_2-SCN$); and methyl isothiocyanate ($-CH_2-NCS$).

Claim 15 is illustrative of the subject matter of the rejected claims and reads as follows: "15. The substance selected from the group consisting of 4-methyl naphthyl-1-acetonitrile, 2-methyl naphthyl-1-ace-tonitrile, 4-methyl naphthyl-1-acetic acid, 2-methyl naphthyl-1 acetic acid, the lower

esters and alkali salts of 4-methyl napthyl-1-acetic acid and 2-methyl naphthyl-1-acetic acid, 4-methyl naphthyl-1-acetamide, 2-methyl naphthyl-1-acetamide, 4-methyl naphthyl-1-methyl thiocyanate, 2-methyl naphthyl-1-methyl thiocyanate, 4-methyl naphthyl-1-methyl isothiocyanate and 2-methyl naphthyl-1-methyl isothiocyanate."

■ Claims 1, 4, 6, 9, 15, 16, 17 and 18 were rejected as unpatentable over the prior art. Claims 6, 9, 16 and 18 were further rejected as substantial duplicates of claims 1, 4, 15 and 17, respectively. Claims 2, 5, 7, 10 and 11 were rejected as not reading on the elected species. Therefore they may not be considered on their merits here. Claims 1, 6, 15, 16, 17 and 18 were also rejected as containing improper Markush groups.

The prior art cited is as follows: Carpmael (Br.), 325,910, 1929; Roblin et al., 2,166,554, July 18, 1939; Weiljard et al., 2,185,237, January 2, 1940; Henry. "Berichte Deut. Chem. Gesell," Vol. 2, page, 637; Behrend et al., "Annalen," Vol. 344, pp. 24-5; Fries et al., "Annalen," Vol. 470, pp. 34-5; Hewett, "Jour. Chem. Soc." (London) 1940, pp. 293-303.

In the patent to Carpmael aromatic compounds are disclosed, containing one or more of the methoxy groups and more than one thiocyanate residue, each of the latter connected to the nucleus through a $CH_2$ group, which " * * * are distinguished by an extraordinarily strong insecticidal action."

The Roblin et al. patent relates to the synthesis of naphthaleneacetic acid and naphthyl acetonitrile in the first position. It is disclosed in the patent that the acid is " * * * one of the plant hormones favoring growth."

The Weiljard et al. patent relates to a process of preparing the nitriles of alpha-naphthyl substituted lower fatty acids substantially free from the beta isomer and discloses naphthyl acetic acid ("1-naphthaleneacetic acid" and "alpha-naphthyl acetic acid") and naphthyl acetonitrile ("alpha-naphthyl acetonitrile") in the first position.

The Fries et al. reference discloses methyl naphthyl in the first position and acetic acid and the corresponding amide in the second position.

The Hewett publication discloses dimethyl-naphthylacetic acid in the first position and the naphthyl radical in the third and fourth positions, together with the corresponding sodium salt and acetonitrile.

It is not necessary to discuss the other references.

The compounds of the references are not identical with the claimed compounds. They differ only in the positions of the methyl and acetic acid radicals. In the Fries et al. reference the radicals are reversed in positions from those of the claimed compound and in the Roblin et al. and Weiljard et al. patents the same acetic acid radical is present in the first position, as in the claimed compounds. The difference between the claimed compounds and those of the Roblin et al. and Weiljard et al. compounds is that in the compounds of those references there is no methyl radical. The only difference between the claimed compounds and the compound of the Hewett reference is the presence of an additional methyl radical in the fourth position.

The Primary Examiner stated that when the claimed compound is compared with the compound of the Fries et al. reference, " * * * it will be evident that both contain exactly the same chemical constituents in the same proportion and the two compounds are merely isomers of one another." In other words the compound disclosed in the Fries et al. reference is an isomer of the claimed compound and, therefore, necessarily possesses similar chemical and physical properties.

Appellant contends that the position of the substituted radical is critical, but there are included in the quoted claim alternatively two different positions, the fourth and second, of the methyl group and several of the non-elected claims call for isomers of the substances set out therein.

It will be observed that the compound of the Roblin et al. patent is a hormone which favors the growth of plants and that that compound is identified by naphthyl acetic acid in the first position. The same compound is said to possess plant growth prop-

erties in the Weiljard et al. patent. The thiocyanate group connected to the nucleus through a $CH_2$ group, as disclosed in the patent to Carpmael, is said to possess extremely strong insecticidal properties.

As we view the references, hereinbefore discussed, it seems that there could be nothing unexpected found in the compounds defined by appellant.

We think it should be expected that the compounds of appellant would possess properties regulating the growth of plants such as the compound disclosed in the Roblin et al. and the Weiljard et al. references and that appellant's compound containing the thiocyanate radical would have similar insecticidal and fungicidal properties as the compound of the patent to Carpmael.

Appellant filed an affidavit subsequent to the date of the examiner's statement and prior to the decision of the board the general tenor of which seems to be that any specific compound for the regulation of plant growth, killing insects or fungi may not be accurately predicted. However, as was properly observed by the board in its decision, no comparison was shown in the affidavit to indicate that the compounds of appellant, as generalized in the generic groups, are possessed of any properties differing in kind from the compounds of the references. The board further stated: "Applicant's showing, if it teaches anything, is that the action of compounds is specific—that is, that each individual compound has special properties. None of applicant's claims is specific, but the smallest group (e. g., claim 9) calls for two different compounds, 2-methyl and 4-methyl, which differ as much from one another as they do from the references."

We agree with the tribunals below that in view of the prior art it would be reasonably expected that appellant's claimed compounds would possess growth regulating, or insecticidal or fungicidal properties. There is nothing in the record, however, to show such unexpected utility in the compounds as would involve invention.

Of course, it is true, as contended by appellant, that " * * * none of the references disclose plant growth regulating, fungicidal and insecticidal activities possessed by one and the same substances." However, all the claimed compounds of appellant are not claimed by him to possess those three characteristics. It is specifically set forth in the application that all of the compositions are plant hormones in that they possess the property of influencing, regulating and controlling the growth of plants, but that "thiocyanate and isothiocyanate, in addition to being plant hormones, are very effective as insecticides and fungicides." Both of those compounds are set out in the non-elected species of claim 5.

We are of opinion, in view of what has been said, that generic claim 15 is unpatentable over the prior art. Appellant has made no distinction between the claims and we find no reason to make any such distinction. Therefore, the other generic claims 1, 6 and 16, together with specific claims 4, 9, 17 and 18, fall with the rejection of claim 15.

For the reason that, in our opinion, the claims were properly rejected on the prior art, it is not necessary to discuss the other reasons for rejection given by the tribunals below.

The decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.